# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER dba UNIVERSITY MEDICAL CENTER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JOHN SOUZA, et al.,<br><br>　　　　　Defendants. | 1:07cv0325 LJO SMS<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>(Document 14) |

　　　　Plaintiff Fresno Community Hospital and Medical Center dba University Medical Center ("UMC") filed the instant motion to remand this action on May 11, 2007. The matter was heard before the Honorable Sandra M. Snyder, United States Magistrate Judge, on June 29, 2007. Gary L. Lahendro appeared on behalf of UMC. John C. Provost appeared on behalf of Defendants John Souza, Ida Hailstone, and James Long, individuals in their capacity as Trustees (current and former) of the Northern California General Teamsters Security Fund ("Teamsters"), and Chat Systems, Inc. and Wm. Michael Stemler, Inc., both dba Delta Health Systems (collectively "Defendants").

**PROCEDURAL BACKGROUND**

UMC filed the underlying action in Fresno County Superior Court on December 8, 2006, alleging breach of contract-based claims against Defendants.

On February 28, 2007, Defendants removed the action to this Court based on preemption by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). Defendants assert that the complaint "artfully alleges a cause of action for benefits payable, if at all, under the terms of an employee benefit plan sponsored" by the Teamsters and administered by Delta. Notice of Removal, at 3.

UMC filed the instant motion to remand on May 11, 2007. Defendant opposed the motion on June 1, 2007, and UMC filed its reply on June 22, 2007.

Defendants also filed a motion to dismiss on June 1, 2007. The hearing was continued to July 26, 2007, pending resolution of the instant motion to remand.

**ALLEGATIONS AND CAUSES OF ACTION**

According to the complaint, UMC entered into a contract with Blue Cross of California (the "Blue Cross Contract") pursuant to which it agreed to provide medically necessary services, equipment and supplies to individual enrollees of health plans registered with Blue Cross as "Payor" signatories to the Blue Cross Contract. Teamsters was a Payor signatory to the Blue Cross Contract. In exchange, Teamsters agreed to pay UMC for the medically necessary services, equipment and supplies rendered to the individual enrollees in Teamsters' health plan. The negotiated rates under the Blue Cross Contract provided for such services to be paid at a ten percent discount. UMC agreed to submit bills to Teamsters and/or Teamsters' agent reflecting the ordinary total billed charges for services rendered to the individual enrollees of Teamsters' health plan on a claim form, and Teamsters would then process and pay each claim at the ten percent discounted rate. Complaint, ¶¶ 9-12. Delta Health Systems was the third party administrator for the Teamsters' plan.

The complaint alleges that Teamsters failed to pay for medical treatment provided to two patients enrolled in Teamsters' health plan. UMC alleges that Teamsters verified that these patients were enrolled in their health plan yet failed to pay the final bills. After application of the

discount, UMC alleges that it is owed a total of $38,952.93 ($43,281.03 prior to discount).

UMC alleges causes of action for breach of contract, quantum meruit and negligent misrepresentation against Teamsters. It alleges intentional interference with contractual relations against Delta Health Systems based on the allegation that Delta convinced Teamsters to withhold payment on the pretext that they could do so pending the completion and delivery of certain forms.

## **DISCUSSION**

UMC argues that this action should be remanded because it attempts to recover on an independent state law-based breach of contract obligation owed by Defendants. It believes that Defendants' removal of this action is based on a fundamental misconstruction of the nature of the causes of action and that it is not, as Defendants contend, asserting claims for "benefits from an employee welfare benefit plan..." Notice of Removal, at 3.

A.   <u>Legal Standard</u>

By statute "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The burden of establishing federal jurisdiction is upon the party seeking removal, and the removal statute is strictly construed against removal jurisdiction. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988).

A "cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). However, the Court may examine the entire record to determine if the real nature of the claim is federal, notwithstanding plaintiff's characterization to the contrary, when the plaintiff has, by "artful pleading," attempted to defeat defendant's right to a federal forum. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n. 2 (1981). A complainant cannot "avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law." Harper v. San Diego Transit Corp., 764 F.2d 663, 666 (9th Cir.1985).

3

B.    <u>ERISA Preemption</u>

ERISA preempts state law claims that "relate to" an employee benefit plan. See 29 U.S.C. § 1144(a). A common law claim "relates to" an employee benefit plan governed by ERISA "if it has a connection with or reference to such a plan." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995). The Ninth Circuit has explained that common law claims do not "relate to" an ERISA plan when the "adjudication of the claim required no interpretation of the plan, no distribution of benefits, and no dispute regarding any benefits previously paid." Peralta v. Hispanic Business, Inc., 419 F.3d 1064, 1069 (9th Cir.2005); see, e.g., Winterrowd v. Am. Gen. Annuity Ins. Co., 321 F.3d 933, 937-39 (9th Cir.2003) (no ERISA preemption because there was no ERISA plan); Curtis v. Nevada Bonding Corp., 53 F.3d 1023, 1027-29 (9th Cir.1995) (no ERISA preemption because plaintiff never became eligible to receive benefits under the plan). In contrast, where a claim requires interpretation of an ERISA plan or law, ERISA preemption exists. See Peralta, 419 F.3d at 1069.

Here, then, UMC can only escape ERISA preemption if it can either identify a separate contract between the parties, or allege a specific misrepresentation that would not require interpreting Teamster's ERISA plan and would not affect the relationships between ERISA participants. See Geweke Ford v. St. Joseph's Omni Pref. Care Inc., 130 F.3d 1355, 1358 (9th Cir.1997).

C.    <u>Analysis</u>

    1.    First, Second and Third Causes of Action

UMC's motion is based on the argument that ERISA does not preempt claims by a third-party hospital suing on an independent obligation created by a health plan's representation that it would pay for the medical services provided to its members, where the hospital does not sue as an assignee of an ERISA beneficiary. UMC relies on The Meadows v. Employers Health Ins., 47 F.3d 1006, 1008 (9th Cir. 1995), where a third-party health care provider alleged breach of contract, estoppel and negligent misrepresentation against a health plan for failure to pay for medical services despite oral and written representations that the patient was covered. The court

4

held that ERISA does not preempt claims by a third-party who sues an ERISA plan not as an assignee of a purported ERISA beneficiary**,** but as an *independent* entity claiming damages. Recognizing that a state law is preempted if it "relates to" an employee benefit plan, i.e., "if it has a connection with or reference to such a plan," the court adopted the Fifth Circuit's finding of preemption if (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities.  Meadows, 47 F.3d at 1009 (citing Memorial Hospital System v. Northbrook Life Ins. Co., 904 F.2d 236, 245 (5th Cir.1990)); General AM. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1522 (9th Cir. 1993) (ERISA does not preempt regulation of relationships "where a plan operates just like any other commercial entity- for instance the relationship between the plan and its own employees, or the plan and its insured or creditors, or the plan and the landlords from whom it leases space.").  The court found that the Meadow's state law claims made no reference to, and functioned irrespective of, the existence of an ERISA plan.  Id.

   While UMC's initial premise is true, it does not accurately reflect the nature of this case. UMC explains that its causes of action arise from a "two-tier" agreement.  The core of the agreement is the Blue Cross Contract between Blue Cross and UMC, and the ability of Payors such as Teamsters to "access" this contract and the related discounted rates.  In other words, Teamsters is able to take advantage of UMC's discounted rates through UMC's agreement with Blue Cross.  The second layer of UMC's argument is based on the alleged misrepresentation communicated to UMC by Delta Health Systems.  According to UMC, Delta Health Systems verified coverage of the two patients at issue and authorized treatment **pursuant to the terms of the Blue Cross Contract.**  Although UMC urges this Court to find that this communication created an independent obligation that takes this case outside the realm of ERISA preemption, a result that would indeed arise under a set of facts different than those at hand, neither the parties nor the Court can escape the conclusion that the contract upon which UMC bases its rights

requires interpretation of the underlying Teamsters' Plan.[1]

Section 6.14 of the Blue Cross Contract provides as follows:

> BLUE CROSS agrees to verify to HOSPITAL a person's BLUE CROSS membership and to identify for HOSPITAL, based upon information provided by HOSPITAL, waivered conditions, current balance of lifetime maximum and any dollar limits applicable under the relevant Benefit Agreement. . . .  A guarantee of eligibility is not a guarantee of payment.  If HOSPITAL is notified that the member is eligible, HOSPITAL is entitled to payments for services rendered, covered under, and **subject to the exclusions and limitations of the relevant Benefit Agreement.**

Exhibit A, attached to Declaration of John Provost, at 13 (emphasis added).

This specific reference requires an examination and interpretation of the underlying Teamsters' Plan and therefore distinguishes this case from those cited by UMC that found state law causes of action not preempted.  For example, in Blue Cross of California v. Anesthesia Care Assoc. Medical Group, Inc., 187 F.3d 1045, 1049 (9th Cir. 1999), the Ninth Circuit held that the claims of a provider against Blue Cross for breach of the provider agreement and violation of implied covenants did not fall within the scope of ERISA's enforcement provision and did not otherwise "relate to" an ERISA plan.  Unlike the instant action, this action involved a dispute between the parties related to changes in the fee schedule, and therefore did not require any reference to, or interpretation of, an underlying benefits plan.  Such a case did not involve "the difficulties that Congress sought to avoid with ERISA's preemption clause . . ." Id. at 1054; Hoag Memorial Hospital v. Managed Care Admin., 820 F.Supp.1232 (C.D.Cal. 1993) ("[w]hile the power of ERISA's preemptive provision is indeed strong, its sweep should not be allowed to ensnarl the claims of a non-ERISA entity suing under state law not to recover benefits under the terms of the plan, but rather to recover for misrepresentations that it would be paid those

---

[1] According to the Declaration of Kris Wojdylak ("Wojdylak Dec."), Patient No. 1 was a participant in the Teamsters' Fund, which is a multi-employer trust fund.  Pursuant to the subrogation provision of the Summary Plan Description, a participant is required to sign a reimbursement agreement, and failure to do so will invalidate the claim for benefits.  The Fund requested that Patient No. 1 sign the agreement, but he failed to do so and UMC's request for payments was therefore denied.  Wojdylak Dec., ¶¶ 8-11.

Patient No. 2 was a covered dependent in a plan sponsored by Foster Farms.  Pursuant to the Summary Plan Description section entitled "Coordination of Benefits," the participant must provide information about other coverage they may have.  Foster Farms believed that Patient No. 2 had other coverage, as well as a preexisting condition, and repeatedly requested information about these matters.  Patient No. 2 failed to do so and therefore benefits were denied.  Wojdylak Dec., ¶¶ 8-11

6

1  benefits."). Similarly, in Meadows, despite the representation of coverage, the patients at issue
2  were not beneficiaries of any plan at the time of the misrepresentation, thus obviously resulting in
3  the conclusion that the claim did not "relate to" the provisions of an ERISA plan. Meadows, 47
4  F.3d at 1010; Hoag, 820 F.Supp at 1235 ("Plaintiff's claims do not 'relate to' the Plan [because]
5  Plaintiff is not an ERISA plan participant or beneficiary who is seeking to recover for improper
6  processing of a claim for plan benefits **or for breach of contract**) (emphasis added).
7        A finding of preemption is further supported by the distinction drawn between cases
8  where coverage and eligibility are disputed and cases where reimbursement is at issue. Where
9  the litigation involves coverage and eligibility disputes, preemption is generally found because
10 interpretation of the plans will likely be necessary. See e.g., Pascack Valley Hospital v. Local
11 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 402 (3d Cir. 2004) ("Were coverage
12 and eligibility disputed in this case, interpretation of the Plan might form an 'essential part' of the
13 Hospital's claims."); Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir. 2003)
14 ("Because this is merely a claim for reimbursement based upon the third-party settlement, it does
15 not 'relate to' the plan."). Cases that apply ERISA preemption also recognize this distinction.
16 Hermann Hosp. v. MEBA Medical and Benefits Plan, 959 F.2d 569, 578 (5th Cir. 1992)
17 (Plaintiff's state law claims of fraud and negligent misrepresentation "are based upon the failure
18 of MEBA to pay benefits to which Hermann was entitled . . . and have a nexus with the ERISA
19 plan and its benefit system.")
20       UMC also attempts to avoid ERISA preemption by making a distinction between
21 "benefits" and "damages." It contends that the enrollees received the "benefit" to which they
22 were entitled, i.e., health care, and it is not making any claim to the contrary. Rather, according
23 to UMC, it moves to recover contractual "damages" based on the alleged misrepresentation that
24 it would receive payment for its services. In this context, though, any difference between
25 "benefits" and "damages" is tenuous, at best, and is a distinction without a difference. Benefits
26 provided to health plan enrollees certainly include medical treatment, but, almost as importantly,
27 include *payment* to the provider of services. Indeed, a health plan would hardly provide any
28 benefit at all if it merely provided treatment and left the enrollee solely responsible for the

resulting medical bills.

The Court is also cognizant of UMC's concern that, by denying payment based on an enrollee's failure to follow procedures under their health plan, the risk of non-payment will be transferred to the hospital. Yet this argument assumes that UMC will be left with no recourse. To the contrary, UMC can step into the shoes of the patient/enrollees and sue under an assignment of benefits. Such a suit would, without question, be preempted by ERISA, and for this reason, UMC argues that it would be an enormous business burden to require it to seek payment in this way. This Court, though, is bound by the laws enacted by Congress and while it can interpret these laws, it cannot displace them.

For the reasons stated above, the Court finds that UMC's First, Second and Third Causes of Action are preempted by ERISA.

    2.    Fourth Cause of Action

The Fourth Cause of Action for intentional interference with contractual relations is alleged only against Delta Health Systems. UMC alleges that Delta "improperly, unfairly, maliciously, fraudulently and/or oppressively interfered in the aforementioned contractual relations between Fresno Community Hospital and Teamsters by convincing Teamsters to withhold full and proper payment to Fresno Community Hospital on the pretext that Teamsters had such a right pending the filling out and delivery of certain forms..." Complaint, at 13.

Defendants appear to concede that this cause of action arguably survives ERISA preemption because it is not against the Plan or Plan trustee (i.e., it does not involve a relationship that ERISA intended to regulate), but nonetheless argue that it should be dismissed. Going beyond the scope of this motion to remand, Defendants contend that this cause of action fails to state a claim because the complaint does not allege that Delta induced Blue Cross to breach the contract, but rather claims that Delta induced non-party Teamsters to breach the contract. Arguments to dismiss causes of action, however, are not properly before this Court on this motion to remand and will not be further considered.

To the extent that the Fourth Cause of Action is not preempted by ERISA, the cause of action will remain based on this Court's supplemental jurisdiction. 28 U.S.C. § 1367.

**CONCLUSION**

Based on the above, the Court finds that the First, Second and Third Causes of Action are preempted by ERISA. UMC's motion to remand is therefore DENIED.

IT IS SO ORDERED.

**Dated:**   July 3, 2007                             /s/ Sandra M. Snyder
                                                     UNITED STATES MAGISTRATE JUDGE